# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Dominique Antoinette Spitzers,

      Plaintiff

v.

Golden Technologies Inc. et al.,

      Defendants

Case No.: 2:25-cv-00541-JAD-BNW

**Order Granting Motion
to Dismiss in Part**

[ECF No. 5]

Dominique Antoinette Spitzers, a Nevada Air Force veteran, suffers from osteoporosis and Raynaud's disease.[1]  To aid her daily functioning, the U.S. Department of Veterans Affairs (VA) supplied her with a mobility scooter.[2]  She alleges that, while riding it to work, the scooter suddenly malfunctioned and failed to stop, "taking [her] over a curb" and "causing her to fall"[3] and "sustain[] severe injuries."[4]  Spitzers sues the scooter's manufacturer Golden Technologies Inc., asserting claims for strict products liability; breach of express warranty; negligence; negligent manufacturing; and negligent hiring, training, retention, and supervision.  Golden Technologies moves to dismiss for lack of personal jurisdiction and for failure to state a claim, or alternatively for a more definite statement.[5]

---

[1] ECF No. 10 at 2.

[2] ECF No. 1 at 3, ¶ 15; ECF No. 3 at 10.

[3] ECF No. 10 at 3.

[4] *Id.*

[5] Golden Technologies mentions that this court lacks subject-matter jurisdiction under 12(b)(1) but does not develop that point.  *See* ECF No. 5 at 3 ("Defendant GT moves this court to dismiss this action . . . under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6)").  Because Spitzers's Federal Torts Claim Act against the VA grants this court subject-matter jurisdiction, it can exercise supplemental jurisdiction over her other claims because they "derive from a common nucleus of operative fact." *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

Because Spitzers has shown that this court may exercise personal jurisdiction over Golden Technologies, I deny the motion on those grounds.  But I grant the motion for failure to state a claim in part.  Spitzers states plausible claims for strict products liability, breach of warranty, and negligence, but her negligent-manufacturing claim duplicates her negligence claim, and her negligent-hiring claim is insufficiently pled.  I also deny Golden Technologies' request for a more definite statement because the complaint is not so vague or ambiguous that Golden Technologies cannot reasonably respond to it.

## Discussion

**A.    This court considers Spitzers's evidence as support for her personal-jurisdiction arguments only.**

In support of Spitzers's opposition to the motion to dismiss, her counsel filed a declaration and 18 exhibits.[6]  Golden Technologies asks me to ignore this evidence and look only within the four corners of Spitzers's complaint to decide its Federal Rule of Civil Procedure (FRCP) 12(b)(2) motion because "materials outside of the pleadings cannot be considered on a motion to dismiss."[7]  It's true that the FRCP 12(b)*(6)* inquiry is limited to a pleading's facial allegations,[8] but a court is not confined to the complaint and may consider extrinsic evidence in deciding a motion to dismiss for lack of personal jurisdiction under FRCP 12(b)*(2)*.[9]  So when a defendant seeks dismissal under both FRCP 12(b)(2) and 12(b)(6), the court may rely on such

---

[6] *See* ECF Nos. 10-1–10-20.

[7] ECF No. 11 at 2.

[8] *See* Fed. R. Civ. P. 12(b)(6).  Otherwise, the court must convert the motion to dismiss into one for summary judgment.  *See* Fed. R. Civ. P. 12(b)(6); 12(d).

[9] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir. 1977)) ("A court may permit discovery to aid in determining whether it has in personam jurisdiction.").

material in deciding the personal-jurisdiction issues but not when deciding whether the complaint states a claim.[10] So I consider the evidence that has been submitted for the personal-jurisdiction issues,[11] but I look only within the four corners of the complaint to evaluate the pleading's sufficiency.

**B.      This court has personal jurisdiction over Golden Technologies.**

The Fourteenth Amendment to the U.S. Constitution limits a forum state's power "to bind a nonresident defendant to a judgment of its courts."[12] So a federal district court may only exercise jurisdiction over a nonresident defendant with sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[13] To determine its jurisdictional reach, a federal court must apply the law of the state in which it sits.[14] Because Nevada's long-arm statute reaches the constitutional zenith,[15] the question is whether jurisdiction "comports with the limits imposed by federal due process."[16] FRCP 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction.[17] A court may exercise jurisdiction over a nonresident defendant only if it has

---

[10] *See, e.g.*, *Om Recs., LLC v. OM Developpement, SAS*, 2024 WL 3049449, at *6 (N.D. Cal. June 17, 2024); *PlayUp, Inc. v. Mintas*, 2023 WL 2020791, at *5 (D. Nev. Feb. 13, 2023); *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015).

[11] *See Schwarzenegger*, 374 F.3d at 800.

[12] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[13] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[14] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[15] Nev. Rev. Stat. § 14.065.

[16] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

[17] Fed. R. Civ. P. 12(b)(2).

1  sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does

2  not offend 'traditional notions of fair play and substantial justice.'"[18]

3      The law recognizes two categories of personal jurisdiction: general and specific. General

4  jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum

5  state—contacts so pervasive that they "approximate" the defendant's "physical presence" in the

6  forum.[19] Because neither party argues that Golden Technologies is subject to general

7  jurisdiction in Nevada, I undertake only a specific-jurisdiction analysis. Specific jurisdiction

8  "focuses on the relationship among the defendant, the forum, and the litigation."[20] For specific

9  jurisdiction to attach, "[t]he plaintiff cannot be the only link between the defendant and the

10 forum,"[21] and "[t]he unilateral activity of those who claim some relationship with a nonresident

11 defendant cannot satisfy the requirement of contact with the forum [s]tate" either.[22]

12     The Ninth Circuit applies a three-prong test to determine whether the court may exercise

13 specific jurisdiction over an out-of-state defendant: (1) the defendant "must have performed

14 some act or consummated some transaction with the forum by which it purposefully availed

15 itself of the privilege of conducting business" in the forum state; (2) the plaintiff's claims "must

16 arise out of or result from [those] forum-related activities; and (3) the exercise of jurisdiction

17

18

19

20

---

[18] *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).

21 [19] *Schwarzenegger*, 374 F.3d at 801.

[20] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984))
22 (internal quotation marks omitted).

23 [21] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[22] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

must be reasonable."[23]    The plaintiff bears the burden of satisfying the first two prongs.[24]  In

deciding whether a plaintiff has met that burden, the court must accept as true the uncontroverted

allegations in its complaint, but a plaintiff cannot rely on "bare allegations" alone.[25]  The court

also may review affidavits or declarations submitted by either side,[26] and "conflicts between the

parties over statements contained in affidavits must be resolved in the plaintiff's favor."[27]  If the

plaintiff satisfies the first two prongs, then the defendant must show a "compelling case that the

exercise of jurisdiction would not be reasonable" in order to escape the exercise of jurisdiction.[28]

### 1.    *Golden Technologies has purposefully availed itself of the benefits of doing business in Nevada.*

The term "purposeful availment" in the first prong of the specific-jurisdiction test

describes two distinct analyses, depending on the type of claim: purposeful availment and

purposeful direction.[29]  Courts generally apply the purposeful-availment test to suits sounding in

negligence and products liability,[30] and the purposeful-direction test to intentional torts.[31]

Because Spitzers alleges negligence and products-liability claims, the purposeful-availment test

applies here.  Spitzers contends that this prong is met under the "stream of commerce" theory.

To establish specific jurisdiction under that theory, a plaintiff must allege "something more" than

---

[23] *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *see also Schwarzenegger*, 374 F.3d at 802.

[24] *Schwarzenegger*, 374 F.3d at 802.

[25] *Id*. (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

[26] *Id*.

[27] *Id.* at 800 (cleaned up).

[28] *Id.* at 802 (cleaned up).

[29] *Id*.

[30] *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007).

[31] *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018).

the mere sale of products in the forum—such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state."[32]

The Ninth Circuit found that "something more" in *Yamashita v. LG Chem, Ltd.*  A battery designed, manufactured, and distributed by LG Chem exploded and injured a Hawaiian resident.[33]  He claimed that LG Chem purposefully availed itself of the Hawaiian forum with four sets of contacts: shipments through the port of Honolulu, participation in Hawaii's residential solar-battery market, batteries embedded in consumer products sold in Hawaii, and stand-alone batteries offered on a third-party website.[34]  The Ninth Circuit held that shipments through the Port of Honolulu qualified as purposeful availment because the company relied on Hawaii's laws to protect its property while in transit,[35] and that LG Chem's involvement in the sale of residential solar batteries in Hawaii also qualified as purposeful availment.[36]  But the court found that consumer products sold in Hawaii containing LG Chem's batteries could not be a jurisdictional hook because there was no evidence that LG Chem itself directed those batteries into Hawaii or created, controlled, or employed the distribution system that brought them there.[37] The court also rejected the theory that jurisdiction attached because stand-alone batteries were

---

[32] *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987).

[33] *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 501 (9th Cir. 2023).

[34] *Id.* at 504.

[35] *Id.*

[36] *Id.*  While the *Yamashita* court found purposeful availment under these two theories, it ultimately affirmed the district court's dismissal for lack of jurisdiction because the injury did not arise from this purposeful availment.  *See id.* at 507.

[37] *Id.*

sold into Hawaii through a third-party website.[38]  LG Chem submitted sworn statements denying

such sales, Yamashita offered no evidence to the contrary, and even if such sales had occurred,

they could not establish purposeful availment without proof that LG Chem was targeting the

Hawaii market, the court reasoned.[39]

Also illustrative of the type of business activity needed for purposeful availment is *Asahi*

*Metal Industry Co. v. Superior Court*.  Asahi sold tire-valve assemblies to a Taiwanese company,

which in turn incorporated them into tubes that were later sold in California.[40]  The Supreme

Court of California held that Asahi's awareness of the valves' likely destination sufficed for

jurisdiction.[41]  But the U.S. Supreme Court reversed.[42]  It found that awareness alone does not

amount to purposeful availment,[43] and because Asahi had no office, property, advertising, or

distribution channels in California, Asahi had not deliberately directed its business toward the

forum.[44]

Golden Technologies' contacts differ from those found insufficient in *Asahi* and

*Yamashita*.  Unlike Asahi, Golden Technologies did more than release its products into the

stream of commerce hoping they might reach the forum—it launched one of its scooters at a

trade show in Las Vegas.[45]  And unlike in *Yamashita*, in which the Ninth Circuit found third-

party resales insufficient, Golden Technologies maintains ten authorized retailers and service

---

[38] *Id.*

[39] *Id.*

[40] *Asahi*, 480 U.S. at 106.

[41] *Id.* at 108.

[42] *Id.*

[43] *Id.* at 112–13.

[44] *Id.*

[45] ECF No. 10 at 2–3; ECF No. 10-8 at 2.

1  centers in Nevada, including those that sell and service its mobility scooters.[46]  The company

2  also advertises its products, including mobility scooters, on Nevada distributors' websites.[47]

3  Golden Technologies contracted with the VA to supply the very scooter model at issue, and the

4  VA operates two offices in Nevada. And Spitzers, in opposing the motion, alleges that the

5  company has sold and continues to sell substantial numbers of scooters in this state—a point

6  Golden Technologies does not contest in its reply.[48]  The record thus establishes that Golden

7  Technologies has purposefully availed itself of the privilege of conducting business in Nevada,

8  so the first prong of the specific-jurisdiction test is met.

9

10  **2.  *Spitzers's cause of action arises out of Golden Technologies' contacts with this state.***

11  A plaintiff may satisfy the second prong of the minimum-contacts test in two ways:

12  (1) by showing that the injury would not have occurred "but for" the defendant's forum contacts,

13  or (2) by showing a close relationship between those contacts and the controversy even if strict

14  causation is lacking.[49]  For example, in *Ford Motor Co. v. Montana Eighth Judicial District*

15  *Court,* residents of Montana and Minnesota were injured in accidents involving Ford vehicles

16  that had been designed, manufactured, and originally sold outside those states.[50]  Ford argued

17  that jurisdiction was lacking because the plaintiffs' claims would have been "precisely the same"

18  had Ford never conducted business in either forum; in its view, only the state of first sale, design,

19

20

---

21  [46] *Id.* at 3; ECF No. 10-9 at 2.

    [47] ECF No. 10-10 at 2; ECF No. 10-11 at 4.

22  [48] ECF No. 10 at 8.

23  [49] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021).

    [50] *Id.* at 356.

or manufacture could exercise jurisdiction.[51]  The Supreme Court rejected that causation-only

approach.  It found that Ford's conduct in Montana and Minnesota—continuous advertising,

dozens of dealerships, widespread sales, and ongoing repair and parts distribution—was directly

tied to the very models involved in the plaintiffs' accidents.[52]  That nexus supplied the necessary

affiliation "among the defendant, the forum, and the litigation," making the cases "paradigm"

examples of specific jurisdiction.[53]

The Ninth Circuit applied that same framework in *Yamashita* to reach the opposite

conclusion.  Although the court found that LG Chem's port shipments and solar-battery sales

qualified as forum contacts, Yamashita failed to show that his injury either arose from or related

to those contacts because there was no evidence that the specific battery at issue entered Hawaii

through the port, and the residential solar batteries were materially distinct from the small

portable battery that injured him.[54]  Nor could he establish relatedness.[55]  Jurisdiction in *Ford*

rested on sales of the very models at issue, not on unrelated goods merely passing through the

forum, and LG Chem's solar batteries sold in Hawaii bore little resemblance to the small

portable battery that injured Yamashita—they were "as different as sedans and 18-wheelers."[56]

Spitzers argues that Golden Technologies has long marketed, sold, and distributed its

mobility scooters in Nevada, including through a contract with the VA, which supplies scooters

---

[51] *Id.* at 362, 366–67.

[52] *Id.* at 364–65.

[53] *Id.* at 365–66.

[54] *Yamashita*, 62 F.4th at 506.

[55] *Id.* at 506–07.

[56] *Id.*

to veterans through two Nevada offices.[57]  She avers that Golden Technologies' advertisements reached her directly, that its warranties shaped her purchase decision, and that the VA contract provided the channel through which she obtained the very scooter that injured her.[58]  On these facts, she argues that but for Golden Technologies' Nevada distribution, she would not have received the scooter that caused her injuries.[59]  Taken as true, those allegations place this case closer to *Ford* than *Yamashita*.  Like in *Ford*, Spitzers's alleged injury occurred in her home state and involved a product line that is marketed and distributed here.  Even though Spitzers's showing is not as robust as the plaintiffs' in *Ford*, it is stronger than the attenuated ties rejected in *Yamashita*.  And unlike in *Yamashita*, jurisdiction here does not rest on mere foreseeability or unilateral consumer action but on Golden Technologies' own commercial choices—its Nevada retailers, its advertising on Nevada websites, and its VA contract for the model that allegedly injured Spitzers.

> ### 3.  *Golden Technologies does not rebut the presumption that an exercise of jurisdiction would be reasonable.*

Even if the first two requirements are met, personal jurisdiction must also be reasonable under the Due Process Clause.[60]  But once purposeful availment has been established, there is a "strong presumption" that assertion of jurisdiction is reasonable.[61]  So to avoid the court's reach,

---

[57] ECF No 10 at 9.  Although her briefing is not entirely clear, I construe Spitzers's arguments as advancing both theories for satisfying the second prong of the minimum-contacts test.

[58] *Id.*

[59] *Id.*

[60] *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474–75 (9th Cir. 1995).

[61] *Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002).

1 the defendant must make a "compelling case" that other considerations render the exercise of

2 jurisdiction unreasonable.[62]

3        Golden Technologies argues that because the complaint does not allege enough facts to

4 establish personal jurisdiction, "there is no need to consider the argument regarding fair play and

5 substantial justice."[63]  So it skips any substantive argument on this third prong.  Because Golden

6 Technologies has not carried its burden on this prong, I conclude that exercising jurisdiction is

7 reasonable.

8 **C.      Some of Spitzers's claims are sufficiently pled.**

9        With personal jurisdiction established, I turn to the question of whether Spitzers's claims

10 are sufficiently pled.  FRCP 8 requires every complaint to contain "[a] short and plain statement

11 of the claim showing that the pleader is entitled to relief."[64]  While Rule 8 does not require

12 detailed factual allegations, the properly pleaded claim must contain enough facts to "state a

13 claim to relief that is plausible on its face."[65]

14        District courts employ a two-step approach when evaluating a complaint's sufficiency on

15 a Rule 12(b)(6) motion to dismiss.  The court must first accept as true all well-pleaded factual

16 allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption

17 of truth.[66]  Mere recitals of a claim's elements, supported by only conclusory statements, are

18 insufficient.[67]  The court must then consider whether the well-pleaded factual allegations state a

19

20 [62] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

[63] ECF No. 11 at 3.

21 [64] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

22 [65] *Twombly*, 550 U.S. at 570.

23 [66] *Iqbal*, 556 U.S. at 678–79.

[67] *Id.*

plausible claim for relief.[68]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[69]  "A court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."[70]  The plaintiff must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory," and a complaint that fails to meet this standard must be dismissed.[71]

Golden Technologies argues that Spitzers has not met this standard because her factual allegations are too thin for any claim.[72]  For example, it explains, the complaint omits key details: the scooter's make, model, year, and acquisition; the circumstances of the malfunction; where the incident occurred and how Spitzers was traveling to work; and any factual basis for negligent hiring.[73]  In the alternative, it seeks an order for a more definite statement under FRCP 12(e).[74]

---

[68] *Id.* at 679.

[69] *Id.*

[70] *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

[71] *Id.*

[72] In its motion, Golden Technologies contends that, because there are no factual allegations supporting the claims, dismissal is appropriate under Rule 12(b)(2).  ECF No. 4 at 5.  Similarly in its reply, Golden Technologies states that it "maintains its position" that dismissal of its claims for strict liability, breach of warranty, and negligence "is appropriate under Rule 12(b)(2)."  ECF No. 11 at 4.  The reply also contains a full Rule 12(b)(6) analysis of the claim for negligent-hiring, training, retention, and supervision, making the reference to Rule 12(b)(2) for the other claims somewhat confusing.  *Id.* at 4–5.  But because those statements appear within the broader section contending that Spitzers "fail[s] to establish that she is entitled to relief," I construe them as asserting that the factual allegations are insufficient under Rule 12(b)(6) for all claims, despite the apparent typographical error.

[73] ECF No. 5 at 4; ECF No. 11 at 4.

[74] ECF No. 5 at 5.

1              *1.*       ***Spitzers has sufficiently pled her strict-products-liability claim.***

2        To state a strict-products-liability claim in Nevada, a plaintiff must show that "(1) the

3  product at issue was defective, (2) the defect existed at the time the product left the

4  manufacturer, and (3) the defect caused the plaintiff's injury."[75]  Nevada law recognizes three

5  types of defects: manufacturing, design, and inadequate warnings.[76]  The consumer-expectation

6  test is applied in manufacturing- and design-defect cases—a product is defective if it "fails to

7  perform in the manner reasonably to be expected in light of its nature and intended function and

8  is more dangerous than would be contemplated by the ordinary user."[77]  The malfunction itself

9  gives rise to an inference of defect, and direct proof of the cause is unnecessary.[78]

10        For example, in *Krause Inc. v. Little*, a drywall contractor testified that his ladder

11  collapsed while he stood on it.[79]  The Supreme Court of Nevada found that direct proof of the

12  defect's cause was unnecessary because an unexpected and dangerous collapse sufficed to permit

13  a jury to infer a manufacturing defect.[80]  The court emphasized that ladders carry clear consumer

14  expectations: they should not collapse during ordinary use.[81]  The Nevada Supreme Court

15  similarly found in *Stackiewicz v. Nissan Motor Corp.* that because a vehicle's steering wheel

16

17

18

---

[75] *Rivera v. Philip Morris*, 209 P.3d 271, 276 (Nev. 2009).

19  [76] *Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135, 138 (Nev. 1970).

20  [77] *Miller v. DePuy Synthes Sales, Inc.*, 837 F. App'x 472, 473–74 (9th Cir. 2020) (citing *Ford Motor Co. v. Trejo*, 402 P.3d 649, 653 (Nev. 2017)); *Krause Inc. v. Little*, 34 P.3d 566, 572

21  (Nev. 2001).

[78] *Krause*, 34 P.3d at 572.

22  [79] *Id.*

23  [80] *Id.*

[81] *Id.*

suddenly locked and caused a crash, the steering system failed to perform as reasonably expected and was therefore defective.[82]

Spitzers alleges a strict-product-liability claim under a manufacturing-defect theory.[83] She contends that Golden Technologies researched, designed, manufactured, and distributed the mobility scooter she received from the VA and that it failed to stop, causing her injuries.[84] Just as the ladder in *Krause* was not expected to collapse and the steering wheel in *Stackiewicz* was not expected to seize, it can be inferred that a scooter is expected to stop when commanded. At the pleading stage, those allegations plausibly state a strict-liability claim under Nevada law, so I deny the motion to dismiss it.

### 2. Spitzers has sufficiently pled her breach-of-warranty claim.

To state a breach-of-warranty claim under Nevada law, a plaintiff must show that: (1) a warranty existed; (2) the defendant breached that warranty; and (3) the defendant's breach was the proximate cause of the plaintiff's damages.[85] An express warranty arises when a factual statement or a description of the goods becomes part of the bargain.[86] A plaintiff need not prove exactly why a product failed especially when it involves both electronic and mechanical components.[87]

---

[82] *Stackiewicz v. Nissan Motor Corp.*, 686 P.2d 925, 926–29 (Nev. 1984).

[83] ECF No. 1 at 4, ¶¶ 22–28.

[84] *Id.*

[85] *Nevada Cont. Servs., Inc. v. Squirrel Cos. Inc.*, 68 P.3d 896, 899 (Nev. 2003).

[86] *Radcliff v. Amiraslanov*, 381 P.3d 653 (Nev. 2012) (citing Nev. Rev. Stat. § 104.2313).

[87] *Nevada Cont. Servs.*, 68 P.3d at 899.

1   Spitzers alleges that Golden Technologies expressly warranted the scooter's safety

2   "through its advertising, promotional materials, labeling, and/or manuals."[88]  She asserts that

3   these affirmations became part of the bargain, that she relied on them in obtaining the scooter

4   through the VA, and that the scooter failed to perform as warranted when it malfunctioned and

5   caused her injuries.[89]  At the pleading stage, these allegations suffice to allege a warranty, its

6   breach, and resulting damages.  So I deny the motion to dismiss this claim.

7

8   ### 3.   *Spitzers's negligence claim is sufficiently pled, but her negligent-manufacturing claim is duplicative and must be dismissed.*

9   Spitzers pleads claims for both negligence and negligent manufacturing.  Nevada treats

10  those claims the same,[90] so I dismiss the negligent-manufacturing claim as duplicative.  To state

11  a negligence claim, Spitzers must allege: "(1) an existing duty of care, (2) breach, (3) legal

12  causation, and (4) damages."[91]  A breach may be shown if the product was defective because the

13  manufacturer failed to exercise ordinary care.[92]  For example, in *Long v. Flanigan Warehouse*

14  *Co.*, a painter was injured when a ladder's leg split and collapsed.[93]  The Supreme Court of

15  Nevada held that to recover on a negligence theory, the plaintiff had to show (1) a defect in the

16  ladder, (2) that the defect existed when the ladder left the manufacturer, and (3) that the defect

17

18

---

19  [88] ECF No. 1 at 5, ¶¶ 30–36 (cleaned up).

20  [89] *Id.* at 5, ¶ 32.

21  [90] *See Miller v. DePuy Synthes Sales, Inc.*, 2019 WL 4016207, at *6 (D. Nev. Aug. 26, 2019), *aff'd,* 837 F. App'x 472 (9th Cir. 2020); *see also Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.,* 221 P.3d 1276, 1280 (Nev. 2009) (setting forth the elements of a negligence claim).

22  [91] *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008).

23  [92] *See Papike v. Tambrands Inc.*, 107 F.3d 737, 744 (9th Cir. 1997).

[93] *Long v. Flanigan Warehouse Co.*, 382 P.2d 399, 401 (Nev. 1963).

1   resulted from the manufacturer's failure to use ordinary care.[94]  The court recognized that res

2   ipsa loquitur may aid in proving the manufacturer's lack of ordinary care.[95]

3        Spitzers claims that Golden Technologies owed a duty to exercise reasonable care in

4   designing, testing, manufacturing, and distributing its scooters, including the one she received

5   from the VA, and it breached that duty because the scooter malfunctioned and didn't stop.[96]

6   Like the collapsed ladder in *Long*, the allegation that a scooter failed under normal operation can

7   plausibly support an inference that the manufacturer failed to use ordinary care.  Though

8   Spitzers's allegations are thin, they suffice at the pleading stage to state a negligence claim.  So I

9   deny the motion to dismiss this claim.

10

   **4.    *Spitzers has not stated a viable claim for negligent hiring, training, retention, or*
11     ***supervision, and amendment would be futile.***

12        To establish a claim for negligent hiring, training, retention, or supervision of employees,

13   a plaintiff must show that (1) the defendant owed them a duty of care; (2) the defendant breached

14   that duty "by hiring, training, retaining, [or] supervising an employee even though defendant

15   knew, or should have known, of the employee's dangerous propensities"; (3) the breach caused

16   plaintiff's injuries; and (4) damages."[97]  "The tort of negligent hiring imposes a general duty on

17   the employer to conduct a reasonable background check on a potential employee to ensure that

18   the employee is fit for the position."[98]  Beyond hiring, an employer also "has a duty to use

19

20   _____

[94] *Id.* at 404.

21   [95] *Id.*

22   [96] ECF No. 1 at 6, ¶¶ 46–49.

[97] *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 520 P.3d 803, 811
23   (Nev. 2022).

[98] *Hall v. SSF Inc.*, 930 P.2d 94, 98 (1996).

reasonable care in the training, supervision, and retention of [its] employees to make sure the employees are fit for their positions."[99]

This is Spitzers's weakest claim. The complaint alleges only that Golden Technologies owed and breached its duty in the "selection, training, oversight, direction, retention, and control" of its employees and contractors involved with the scooter.[100] But she does not allege how Golden Technologies failed to conduct a reasonable background check or how it inadequately trained or supervised its employees. Nor does she relate her injury to something that went wrong in the employment process. These conclusory assertions fall short of Rule 8's plausibility standard. So I grant the motion to dismiss it.

Spitzers asks me to grant her leave to amend to cure any pleading deficiencies.[101] If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment.[102] In determining whether to grant leave to amend, district courts consider five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) whether the plaintiff has previously amended the complaint, and (5) futility of amendment.[103] The factors do not weigh equally— "[f]utility alone can justify denial of a motion to amend."[104] Spitzers's opposition does not offer any additional facts to support this claim, nor does it suggest that she could cure the deficiencies. So I find that amendment would be futile, and I thus deny leave to amend.

---

[99] *Id.* at 99.

[100] ECF No. 1 at 7, ¶¶ 52–56.

[101] ECF No. 10 at 13.

[102] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

[103] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

[104] *Id.*

##### *5.*      *Spitzers's complaint is not so vague or ambiguous that Golden Technologies cannot reasonably prepare a response.*

Golden Technologies alternatively moves for a more definite statement under Rule 12(e).[105]  That rule permits such relief only when a pleading is "so vague or ambiguous that the [opposing] party cannot reasonably prepare a response," and the movant must identify the specific defects and details sought.[106]  Golden Technologies contends that Spitzers fails to allege how it is liable, omits details about the scooter's make and malfunction, and does not specify where the accident occurred.[107]  But the complaint alleges that Golden Technologies manufactures the scooters provided by the VA, that Spitzers received such a scooter, and that the scooter failed to stop.[108]  Golden Technologies does not explain why the absence of additional detail makes this pleading so "vague or ambiguous" that it cannot reasonably prepare a response, and these additional details can be learned during discovery.  So I deny Golden Technologies' Rule 12(e) motion for a more definite statement.

### Conclusion

IT IS THEREFORE ORDERED that the motion to dismiss for lack of personal jurisdiction and for failure to state a claim **[ECF No. 5] is GRANTED in part and DENIED in part**.  Spitzers's claims for negligent manufacturing and negligent hiring, training, retention, and

---

[105] In both its motion and reply, Golden Technologies suggests this as an alternative for its 12(b)(2) argument.  But the substance of its argument concerns the sufficiency of the pleadings. I therefore construe it as an alternative motion for its Rule 12(b)(6) motion.  ECF No. 8 at 4 ("Defendant GT maintains its position that dismissal is appropriate under Rule 12(b)(2). However, if this court is inclined to deny the motion based upon Plaintiff's opposition, then Defendant GT requests an order for a more definite statement pursuant to Rule 12(e).").

[106] Fed. R. Civ. P. 12(e).

[107] ECF No. 5 at 4.

[108] ECF No. 1 at 3, ¶¶ 13–15.

supervision, are dismissed without prejudice but also without leave to amend.  The motion is

denied in all other respects.

_____
U.S. District Judge Jennifer A. Dorsey
October 22, 2025